In re GREEN.

[Cite as *In re Green* (1995), 101 Ohio App.3d 726.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68657.

Decided March 17, 1995.

*Michael J. Goldberg* and *Terry H. Gilbert,* for petitioner.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *L. Christopher Frey* and *George Sadd,* Assistant Prosecuting Attorneys, for respondent.

---

HARPER, Presiding Judge.

On March 9, 1995, petitioner, Shondo Green, commenced this habeas corpus action against the respondent, Sheriff Gerald McFaul. The gravamen of his claim is that he is being held on excessive bail. The respondent, through the Cuyahoga County Prosecuting Attorney, complied with this court's order to file a brief in opposition by March 14, 1995. After reviewing the prosecutor's brief, this court granted the writ and ordered a hearing. On March 17, 1995, the court conducted that hearing at which both sides presented evidence. For the follow-

ing reasons this court grants relief by ordering that the amount of bond in the underlying case be reduced to $250,000.

In the underlying case, *State v. Green*, Cuyahoga C.P. case No. CR–320139, Green is charged with two counts of drug trafficking, one count of having a weapon under disability and one count of possession of criminal tools. The trial court initially set bail at $500,000. Green moved to reduce bond to $100,000. On March 3, 1995, the trial court conducted a hearing on the motion.

The parties offer the following facts. Pursuant to a search warrant, the police seized one thousand to fifteen hundred grams of cocaine, including some crack cocaine, from Green's apartment and his lockers assigned to him there. The police also found two weapons, one of which may be dangerous ordnance, like a sawed-off shotgun. Because of the large quantity of cocaine, Green was indicted for one hundred times the bulk amount, which carries the penalty of fifteen years to life. Furthermore, in 1991 Green was convicted of drug trafficking and sentenced to eighteen months. That sentence apparently has been discharged.

Additionally, the officer who was the affiant for the search warrants and who interviewed Green after his arrest states the following in his affidavit attached to the prosecutor's brief. Green stated that he was the number two man in his trafficking circle, that he can order up to two kilos of cocaine on credit, that he owes his suppliers $40,000 for previous transactions, that he could discharge this debt by killing a person who had crossed his suppliers, that his parents had recently been robbed of a large quantity of cash at gunpoint by thieves, believed to be a gang that targets drug dealers, and that his suppliers would kill him if they learned that he was cooperating with the police. Accordingly, the prosecutor argues that Green is a high risk for flight to escape both prison and his suppliers.

In his behalf Green submits he has appeared at all prior hearings, including those relating to his prior conviction. He has very strong ties to Cuyahoga County. Except for the years he attended Kent State University, he has spent his entire life in the Cleveland area. His family is here. He has provided substantial assistance to his mother and disabled father, who live in Cleveland Heights. No money was found during the search, and in his supporting affidavit he swears that he has neither resources nor passport to help him flee. Furthermore, at least until the time of his arrest he has been steadily employed by a home contractor. He also asserts that his parents are willing to pledge their house as security to help him make bail. He also asserts that he is aiding the Caribbean Task Force. Finally, a bondsman and acquaintance of the family swears in an affidavit that even with his parents' help, Green cannot make the $500,000 bond.

The trial court maintained bond at $500,000. It reasoned that the prior criminal record, the extraordinary amount of drugs, and the apparent strong weight of the evidence would make Green a possible candidate for flight. This habeas corpus petition followed.

At the hearing Sadie Thomas, Green's natural mother, and his adopted father, James Thomas, testified that they had raised Green, that they talk to him daily, and that he helps them with chores whenever needed, which is usually several times a week. They confirmed that he is regularly employed as a home contractor, going right from one job to another, including major repairs on their house, such as putting in a new kitchen with a bathroom for Mr. Thomas, who was able to get to the witness stand only with the help of a walker. They further testified that they own a house in Cleveland Heights, with $45,000 to $50,000 equity, which they would be willing to pledge as security to obtain their son's release on bail. Mrs. Thomas further stated that they cleaned out his apartment, and that if released on bail, Green would be living with them. The court also inquired about his other relatives and discovered that although he has cousins in Arizona and Kentucky, he has not visited them in several years. Finally, they testified that they understood if Green did not appear timely at his court appearances, they would lose their house and have to try to find somewhere else to live on their Social Security incomes.

Officer John Gannon of the Cleveland Police Department testified that he has been with the Caribbean Task Force for three years and that he interviewed Green after his arrest. The information Green gave during that interview was totally reliable. He further opined that Green was not a flight risk, and that in his opinion a $100,000 bond would be sufficient. The basis for this opinion was the overall impression from the interview and that he would be helpful in going after "major, major drug dealers." He also testified that in his experience with this drug task force none of the accused drug dealers had fled.

Douglas Hyams, a police officer from Shaker Heights, testified that after Green's arrest he interviewed Green regarding an investigation of corruption in the Shaker Heights Service Department. Green had worked there some time ago. Again Green offered useful information regarding that investigation. Officer Hyams, based on his experience as a policeman, opined that Green was not a flight risk because of his lifelong commitment to the Cleveland area.

Officer Douglas Dvorak and assistant prosecutor David Sheldon testified for the respondent. Both testified as to the nature and circumstances of the accused crimes. Detective Dvorak opined that Green was a flight risk because of unsubstantiated cash reserves and the ability and inclination to just pick up and go. Sheldon testified that in his experience many major drug traffickers had capiases issued for them. However, he could not recall with specificity the

amount of the bail set. Indeed, he admitted that for most of the "flights" in his experience, bond rarely exceeded $50,000. He also stated that in most of the super bulk cases, the accused never made bail.

The principles governing habeas corpus in these matters are well established. Under both the United States and Ohio Constitutions, "excessive bail shall not be required." The purpose of bail is to secure the attendance of the accused at trial. Crim.R. 46(A); *Bland v. Holden* (1970), 21 Ohio St.2d 238, 50 O.O.2d 477, 257 N.E.2d 397. In Ohio the writ of habeas corpus protects the right to reasonable bail. *In re Gentry* (1982), 7 Ohio App.3d 143, 7 OBR 187, 454 N.E.2d 987. A person charged with the commission of a bailable offense cannot be required to furnish bail in an excessive or unreasonable amount. *In re Lonardo* (1949), 86 Ohio App. 289, 41 O.O. 313, 89 N.E.2d 502. Indeed, bail set at an unreasonable amount violates the constitutional guarantees. *Stack v. Boyle* (1951), 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. Pursuant to Crim.R. 46, in determining what is reasonable bail, the trial court must weigh various factors: the nature and circumstances of the offense charged, the weight of the evidence, the accused's history of flight or failure to appear at court proceedings, his ties to the community, including his family, financial resources and employment, and his character and mental condition. After weighing these factors, the trial judge sets the amount of bail within his sound discretion. In a habeas corpus action to contest the reasonableness of bond, this court must determine whether the trial court abused its discretion. *In re Gentry; Jenkins v. Billy* (1989), 43 Ohio St.3d 84, 538 N.E.2d 1045; *Lewis v. Telb* (1985), 26 Ohio App.3d 11, 26 OBR 179, 497 N.E.2d 1376.

Similar cases provide the benchmarks for evaluating whether bail is reasonable. In *Jenkins v. Billy, supra,* the Ohio Supreme Court upheld a $250,000 cash bond[1] for a person charged with drug trafficking in three times the bulk amount; the court ruled that allegations of substantial community ties and an insignificant past criminal record did not set forth allegations which would necessitate granting the writ of habeas corpus. In *State ex rel. Garcia v. McFaul* (July 6, 1994), Cuyahoga App. No. 67410, unreported, Garcia was charged with possession of heroin exceeding three times the bulk amount, and her bond was set at $250,000. Furthermore, in that case Garcia had no ties to the Cleveland area. She was a legal alien, living in New York. Thus, her risk of flight was considerable. In *In re Petition of McGraw* (Sept. 24, 1992), Cuyahoga App. No. 64400, unreported, McGraw's bail was set at $200,000 for a multicount

---

1. In *State ex rel. Jones v. Hendon* (1993), 66 Ohio St.3d 115, 609 N.E.2d 541, the Supreme Court ruled under Crim.R. 46(C)(4) that a judge's discretion is limited to setting the amount of the bond. A judge may not condition that amount by stipulating a cash bond. To do otherwise would violate a person's constitutional right to enlist a surety to post bail.

indictment for incest, sodomy and rape. Additionally, he had an eleven-year history of missing court appearances and skipping bail, as well as traveling to Florida and South America. This court ruled that the trial court did not abuse its discretion in setting bail. In *In re Hartberger* (May 29, 1992), Cuyahoga App. No. 63713, unreported, the petitioner was indicted for violating various drug laws, including transporting large quantities of marijuana. The petitioner had a criminal record and a history of flight before 1976 and lived outside Ohio. Bond had originally been set at $500,000. This court ruled that figure was excessive and would amount to no bond at all. This court reduced bail to $10,000, because of the petitioner's advanced age, disability, and indigency.

In the case, *sub judice,* there is no doubt that the very serious nature of the offense and Green's prior criminal record demand a high bail. Indeed, if the trial court had established bail at $250,000, this court would be hard pressed not to summarily approve the trial judge's discretion. However, bail was set at double that amount, at the extraordinarily high figure of $500,000. The United States and Ohio Supreme Courts have reminded us that the right to bail is absolute and that the amount must be reasonable. If the right to bail is not preserved, our liberties, including the presumption of innocence, will be undermined. *State ex rel. Baker v. Troutman* (1990), 50 Ohio St.3d 270, 272, 553 N.E.2d 1053, 1055; *Stack v. Boyle, supra,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. In examining the present case with *Jenkins, Garcia* and *McGraw,* this court concludes that these cases are fully comparable. In all of them very serious offenses are charged. In *Garcia* and *McGraw* there were very significant, demonstrated risks of flight, in comparison to Green, who has undisputed significant ties to Cuyahoga County and no demonstrated risks of flight. If a $250,000 bond is appropriate for individuals who are likely to flee and who are charged with serious offenses, then bond should not be doubled for an individual for whom a propensity or ability for flight has not been established, even if he is charged with a more serious offense. *Hartberger* further supports the proposition that $500,000 bond may be excessive even for serious drug offenses and even if the accused has few ties with the forum and a history of flight. This court also notes that a $250,000 bond is a very high bond.

Accordingly, this court rules that a $500,000 bond for Green is unreasonable. Relief is granted as follows: bond is set for Shondo Green at $250,000 in the underlying case, *State v. Green,* Cuyahoga C.P. case No. 320139. Respondent to pay costs.

*Judgment accordingly.*

PORTER and KARPINSKI, JJ., concur.